UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATURS DESIGN, INC.,

                    Plaintiff,                    Civil Case No. 15-10700
                                                   Honorable Linda V. Parker

v.

SILENT NIGHT, LLC,
a Michigan limited liability company,
and BRUCE O. BAKER, an individual,

                    Defendants.

_____/

## OPINION AND ORDER ON CLAIM CONSTRUCTION

On February 25, 2015, Naturs Design, Inc. ("Naturs" or "Plaintiff") filed this lawsuit against Defendants Bruce Baker ("Defendant Baker") and Silent Night, LLC ("Silent Night") (collectively "Defendants") alleging patent infringement of the patent-in-suit, U.S. Patent No. 8,365,733 ("the '733 patent").

Before the Court are the parties' claim construction briefs relating to interpretation of terms found in the preamble, body, and Claims 1, 2, and 4 of the '733 patent.  The Court held a *Markman* hearing on April 13, 2016 to construe certain terms in the claim.[1]  Defendants filed a supplemental brief on claim construction on October 11, 2016.  (ECF No. 46.)  Plaintiffs responded on October

---

[1] *See Markman v. Westview Instr., Inc.*, 52 F.3d 067 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370, 116 S. Ct. 1384 (1996).

20, 2016.  (ECF No. 51.)  The respective positions of the parties are displayed in the claim chart attached as Exhibit A.

## I.      Background

The patent-in-suit relates to a mask liner product, described and claimed in the patent as "[a] liner for use with a respiratory mask having a face-engaging portion."  (ECF No. 1-2 at Pg ID 23.)  It was developed by Mr. Robert Rutan, the CEO of Naturs to "address the needs of his wife" who suffered from sleep apnea.  (ECF No. 39 at Pg ID 781.)   Mr. Rutan filed a provision patent application, No. 61/056,893 ("the '893 provisional"), on May 29, 2008.  (ECF No. 1 ¶ 14.)  Approximately one year later, Mr. Rutan filed a non-provisional patent application, Serial No. 12/469,998 ("the '998 application"), which claimed the benefit of the '893 provisional.  (*Id.* ¶ 15.)  The '998 application matured into the '733 patent on February 5, 2013.  (*Id.*)

Defendant Baker sent an e-mail to Mr. Rutan on September 17, 2013 stating that he had "designed, developed and begun manufacturing a mask liner product" and "proposed setting up a meeting to discuss" the product.  (*Id.* ¶ 19.)  Mr. Rutan replied on September 19, 2013, stating he would not meet with Defendant Baker and included in his response a reference to the '733 patent.   (*Id.* ¶ 20.)  After this correspondence, Defendant Baker manufactured and sold a CPAP mask liner product that Plaintiff alleges infringes on their patent.  (ECF No. 39 at Pg ID 782.)

2

Plaintiff filed this suit on February 25, 2015, alleging infringement of the '733 patent. Defendants disagree, stating the '733 patent is limiting in nature and focuses on a specific, narrow feature of the liner in combination with the mask. ECF No. 40 at Pg ID 907.) Relying on the prosecution history of the patent, Defendants argue that Plaintiff's patent cannot cover all respiratory mask liners.

The terms in dispute for the purposes of claim construction are listed in the chart titled "Parties' Proposed Constructions for Claim Terms in U.S. Patent No. 8,365,733." (ECF No. 34-1 at Pg ID 749-53.) The terms are found in the preamble and body, along with Claims 1, 2, and 4.

Claim 1 of the '773 patent reads:

1. A liner for use with a respiratory mask having a face-engaging portion, the liner comprising:
    a body constructed from an absorbent material, the body having an outer edge, an inner edge, wherein a perimeter of the outer edge is larger than a perimeter of the face-engaging portion of the respiratory mask for forming an extending portion of the body, the extending portion configured to be in non-adhering communication with a user's face, and the liner is configured to be releasably held by the mask and the user's face such that the outer edge extends beyond the face engaging portion.

Claim 2 of the '733 patent reads:

2. The liner according to claim **1**, wherein the extending portion is a baffle for regulating the flow of air away from the face-engaging portion.

Claim 4 of the '733 patent reads:

3

4.  The liner according to claim **1**, wherein the outer edge has a shape scaled to a general shape of the face-engaging portion.

The first dispute over construction for claim terms is over the phrase "respiratory mask," used in the preamble and body.  The parties agree that "respiratory mask" means "a respiratory device sized to fit over a user's mouth and/or nose."  (ECF No. 34-1 at Pg ID 749.)  However, Plaintiff argues that the phrase "respiratory mask" used in the preamble is not limiting and the claims are drawn to a liner for use with a respiratory mask. (*Id.*)  Defendants argue that the preamble is limiting and the claims require a respiratory mask in combination with a liner.  (*Id.*)  Defendants' position is the claims otherwise would be invalid as indefinite, in particular to the perimeters of the body and face-engaging portion of the respiratory mask. (*Id.*)

The second dispute arises from the use of the phrase "face-engaging portion" in the preamble and body.  The parties agree that this term means "a portion formed to contact a user's face adjacent to the user's mouth and/or nose."  (*Id.* at Pg ID 749-50.)  Again, Plaintiff argues that the preamble is not limiting and the liner is for use with a respiratory mask having a face-engaging portion.  (*Id.*) However, Defendants' position is that the preamble is limiting and the claims require a respiratory mask in combination with a liner, "otherwise the claims

would be invalid as indefinite, including with respect to the perimeters of the body and face engaging portion of the respiratory mask." (*Id.*)

The third dispute arises from the following terms, which both parties agree should have the same construction: "extending portion"; "extending portion of the body"; and "wherein a perimeter of the outer edge is larger than a perimeter of the face-engaging portion of the respiratory mask for forming an extending portion of the body." (*Id.* at Pg ID 750-51.) These terms are found in Claims 1 and 2. Plaintiff argues that the Court should rely on the plain meaning of the term and that no construction is needed. Defendants, however, argue that these terms should be construed to mean a "loosely protruding portion of the liner formed by the liner's outer perimeter extending outwardly beyond the perimeter of the face engaging portion of the mask that is not secured or attached to the mask." (*Id.*)

Similarly, the fourth dispute arises from the phrase "extending portion configured to be in non-adhering communication with a user's face" as found in Claim 1. (*Id.* at 750) Plaintiff argues that the plain meaning of the phrase applies. (*Id.*) Defendants, however, argue that this phrase is indefinite and interpret it as: "the extending portion of the liner is not secured or attached to the respiratory mask in order to loosely protrude outwardly to the liner's outer edge to lay in contact upon a user's face without adhesive." (*Id.*)

5

The next dispute arises from the phrase "the liner is configured to be releasably held by the mask and the user's face such that the outer edge extends beyond the face engaging portion" used in Claim 1. (*Id.* at 752.) Plaintiff argues that the plan meaning applies here. (*Id.*) Defendants propose the following construction: "the liner is held by pressure between the respiratory mask and the user's face without being secured or attached to the respiratory mask." (*Id.*)

The last dispute stems from the use of the phrase "the extending portion is a baffle for regulating the flow of air away from the face-engaging portion." (*Id.*) Plaintiff relies on its prior construction of "extending portion", relying again on plain meaning. (*Id.* at 750, 752.) Defendants argue the term should be construed to mean "the extending portion of the liner forms a plate-like protrusion that lays upon the user's face to regulate the flow of air along the user's face away from the face-engaging portion of the mask." (*Id.* at 752-53.)

## II.   Legal Standard

Claim construction is a matter of law for the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). "Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of

infringement." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

A patent is presumed to be valid. *Young v. Lumenis*, 492 F.3d 1336, 1345 (Fed. Cir. 2007) (quoting *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1238-39). "[T]he evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence." *Id.*

In determining claim construction, the Court "look[s] to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). According to the Court of Appeals for the Federal Circuit's *en banc* decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (2005), "the words of a claim 'are generally given their ordinary and customary meaning.'" *Id.* at 1312-13 (quoting *Vitronics Corp.*, 90 F.3d at 1582). ". . . [T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* There is a "heavy presumption" that claim terms mean what they say and carry their ordinary meaning as viewed by one of ordinary skill in the art. *Lydall Thermal/Acoustical, Inc. v. Fed. Mogul Corp.*, 566 F.Supp.2d 602, 609 (E.D. Mich. 2008).

The *Phillips* court emphasized the importance of looking at the entire patent in construing claims because "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id*. at 1313. Thus, the ordinary meaning of a claim term cannot be looked at in a vacuum. *Id*. (citing *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005)). The ordinary meaning must be viewed in the context of the patent specification and prosecution history. *Id*. (citing *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998)). The court may also consider "extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art" which "consists of all evidence external to the patent history, including expert and inventor testimony, dictionaries, and learned treatises." *Id*. at 1314, 1316 (internal quotation marks and citation omitted).

The Federal Circuit has emphasized the importance of the specification in claim construction:

> The claims, of course, do not stand alone. Rather, they are part of a "fully integrated written instrument" *Markman*, 52 F.3d at 978, consisting principally of a specification that concludes with the claims. For that reason, claims "must be read in view of the specification, of which they are part." *Id*. at 979. As we stated in *Vitronics*, the specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." 90 F.3d at 1582.

8

*Phillips*, 415 F.3d at 1315.  "[C]laims must be construed so as to be consistent with

the specification, of which they are a part."  *Merck & Co. v. Teva Pharms. U.S.A.,*

*Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003).  The *Phillips* court restated the

Circuit's prior summary of this general principle:

> "Ultimately, the interpretation to be given a term can only be
> determined and confirmed with a full understanding of what the
> inventors actually invented and intended to envelop with the claim.
> The construction that stays true to the claim language and most
> naturally aligns with the patent's description of the invention will be,
> in the end, the correct construction."

415 F.3d at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d

1243, 1250 (Fed. Cir. 1998)).  The specification may reveal a special definition

that the inventor has given to a claim term that differs from the meaning it would

otherwise possess and, in that instance, the special definition must govern.  *Id.*

(citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir.

2002)).

     "A claim has three parts: a preamble, transition, and body."  *Roll-Rite, LLC*

*v. Shur-Co, LLC,* No. 12-11150, 2013 WL 3798101 at *3 (E.D. Mich. July 22,

2013) (citing *MagSil Corp. v. Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377,

1383 (Fed. Cir. 2012).  The preamble describes the type of invention being

claimed.  *Id.*  The transition is the word or phrase that connects the preamble to the

body of the claim.  *Id.*  Last, the body "sets forth a series of phrases delineating the

structural limitations, elements, or steps in the invention." *Id.* (citing John L.

Cooper, *Claim Construction – The* Markman *Hearing*, in *Anatomy of a Patent*

*Case* 71 (Federal Judicial Center 2009).

A preamble phrase is limiting when it is "necessary to give life, meaning,

and vitality to the claim." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d

1298, 1305 (Fed. Cir. 1999) (quotation marks omitted). Whether a preamble is

limiting requires a fact-intense inquiry in light of the particular claim being

challenged and the overall invention being described. *Storage Tech. Corp. v.*

*Cisco Sys., Inc.*, 329 F.3d 823, 831 (Fed. Cir. 2003). "Clear reliance on the

preamble during prosecution to distinguish the claimed invention from the prior art

transforms the preamble into a claim limitation because such reliance indicates use

of the preamble to define, in part, the claimed invention." *Catalina Mktg. Int'l,*

*Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). However, if:

> the body of the claim fully and intrinsically sets forth the complete
> invention, including all of its limitations, and the preamble offers no
> distinct definition of any of the claimed invention's limitations, but
> rather merely states, for example, the purpose or intended use of the
> invention, then the preamble is of no significance to the claim
> construction because it cannot be said to constitute or explain a claim
> limitation.

*Roll-Rite, LLC*, at *6; *see also Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349,

1357-58 (Fed. Cir. 2012) ("By contrast, if the body of the claim describes a

structurally complete invention, a preamble is not limiting where it merely gives a

10

name to the invention, extols its features or benefits, or describes a use for the invention") (internal quotation marks omitted).

As indicated earlier, the patent's prosecution history also should be considered, if it is in evidence. *Id*. at 1317 (citing *Markman*, 52 F.3d at 980; *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 33, 86 S. Ct. 684 (1966)). "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Id*. (citation omitted).

Courts are authorized to rely on extrinsic evidence; however, the Federal Circuit has warned that "it is 'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)) (additional quotation marks and citations omitted).  In *Phillips*, the court clarified the role of extrinsic evidence in claim construction, explaining that it should not be elevated above the meaning of the terms of the claim derived from the patent, itself. *Id*. at 1320-23.  Thus a court should not determine the ordinary meaning or meanings of the claim term[s] in dispute based on extrinsic evidence, such as a dictionary, and then consult the specification to determine whether it excludes one of the meanings derived from the dictionary or limits the scope of that meaning. *Id*. at 1320.  Instead, the court must first start with the specification as it "is 'the single best guide to the meaning of a disputed term,' and . . . 'acts as a

11

dictionary when it expressly defines terms used in the claims or when it defines terms by implication.'" *Id*. at 1321 (quoting *Vitronics*, 90 F.3d at 1582). "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id*.

In its final statement concerning the significant role of the specification in claim construction, the *Phillips* court pointed out "that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." *Id*. at 1323 (citing *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1533 (Fed. Cir. 1987)). As such, the court emphasized that the specification likely will have the following value to the claim construction process:

> One of the best ways to teach a person of ordinary skill in the art how to make and use the invention is to provide an example of how to practice the invention in a particular case. Much of the time, upon reading the specification in that context, it will become clear whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive. . . . The manner in which the patentee uses a term within the specification and claims usually will make the distinction apparent.

*Id*. (citations omitted).

### III.   Analysis

### A. Claim Terms

### 1.  "Respiratory Mask" and "Face-Engaging Portion"

12

The parties agree on the meaning of the terms "respiratory mask" and "face-engaging portion" when used in the preamble and body.  (ECF No. 34-1 at Pg ID 749.)[2]  However, the parties disagree on whether the use of "respiratory mask" and "face-engaging portion" in the preamble and body limit the scope of the patent.

Defendants argue that the use of "respiratory mask" and "face-engaging portion" in the preamble of Claim 1 are affirmative claims that provide necessary context for other claims.  (ECF No. 40 at Pg ID 916-18.)  If "respiratory mask" is not an affirmatively claimed element, Defendants argue that the '733 patent claims are indefinite in violation of 35 U.S.C. Section 112.  Defendants claim "there is no objective standard by which to measure the 'extending portion' from the liner, standing by itself, whether it infringes."  (ECF No. 40 at Pg ID 920-21.)

Here, the phrase "respiratory mask having a face-engaging portion" illustrates the intended use.  (*Id.*)  The "liner" is "for use with a respiratory mask having a face-engaging portion."  (*Id.*); *see also Deere & Co.*, 703 F.3d at 1357-58 ("[P]reamble not limiting if it describes a use for the invention.)  The preamble does not "offer[] [a] distinct definition of any of the claimed invention's limitations…rather [it] merely states [] the purpose or intended use of the

---

[2] The parties agree to define "respiratory mask" as "a respiratory device sized to fit over a user's mouth and/or nose."  The parties agree to define "face-engaging portion" as "a portion formed to contact a user's face adjacent to the user's mouth and/or nose."

13

invention." *Roll-Rite LLC* at \*6.  As Plaintiff states in their *Markman* brief, "respiratory mask" and "face-engaging portion" is consistently referred to throughout their patent.  (ECF No. 39 at Pg ID 793.)  Deleting the preamble phrase "respiratory mask" or "face-engaging portion" does not alter the structure of the invention or the way in which it is used.  The body of Claim 1 describes the capabilities of the liner.  (*Id.*)

The Court agrees with Plaintiff.  The use of "respiratory mask" and "face-engaging portion" in the preamble and body are not limiting to the patent.

**2.  "extending portion"; "extending portion of the body"; "wherein a perimeter of the outer edge is larger than the perimeter of the face-engaging portion of the respiratory mask for forming an extending portion of the body"**

The parties agree that these terms all should have the same construction. (ECF No. 44-1 at Pg ID 977.)  Plaintiff argues that no construction is necessary and the plain meaning should apply.  (*Id.*)  Defendants, however, argue that these terms should be construed to mean "a loosely protruding portion of the liner formed by the liner's outer perimeter extending outwardly beyond the perimeter of the face engaging portion of the mask that is not secured or attached to the mask" in order to avoid indefiniteness.  (*Id.*; ECF No. 40 at Pg ID 923.)  The defense primarily relies on the prosecution history, including discussions of prior art, in

14

asserting that Plaintiff now is attempting to impermissibly broaden the scope of the claims.  ECF No. 40 at Pg ID 921.)

Here, the terms could be construed simply in accordance with their plain and ordinary meanings as proposed by Naturs.  The case law in this area has established that "[t]o act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." *See, e.g.*, *Thorner,* 669 F.3d at 1365 (quoting *CCS Fitness, Inc.*, 288 F.3d at 1366) Defendants are requesting that the Court impermissibly import limitations from the specification.  "[L]imitations appearing in the specification will not be read into claims, and….interpreting what is *meant* by a word *in* a claim is not to be confused with adding an extraneous limitation appearing in the specification, which is improper."  *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1348 (Fed. Cir. 2002) (internal quotation mark omitted).  As previously stated, there is a heavy presumption that these terms mean what they say and carry their ordinary meaning. *Lydall Thermal/Acoustical, Inc.*, 566 F.Supp.2d at 609.

### 3. "extending portion configured to be in non-adhering communication with a user's face"

The parties do not agree on the construction of this phrase.  Plaintiff argues the Court should again rely on the plain and ordinary meaning of each term.  (ECF No. 34-1 at Pg ID 750-51.)  Defendants, however, argue that this term is indefinite.

(ECF No. 40 at Pg ID 926.)  In an attempt to construe the term, Defendants attempt to construe this phrase to mean "the extending portion of the liner is not secured or attached to the respiratory mask in order to loosely protrude outwardly to the liner's outer edge to lay in contact upon a user's face without adhesive."  (*Id.* at Pg ID 926-27.)

In order to establish indefiniteness, Defendants must satisfy by clear and convincing evidence sufficient facts to determine invalidity of the patent.  *Young*, 492 F.3d at 1345 (internal quotation omitted).  Defendants fail to do so here.  As Plaintiff argues, this phrase does not include wording that is typically subject to indefiniteness.  (ECF No. 39 at Pg ID 802.)

### 4. "the liner is configured to be releasably held by the mask and the user's face such that the outer edge extends beyond the face-engaging portion"

The parties do not agree on the construction of this phase.  Again, Plaintiff argues the Court should construe this term to adhere to the plain and ordinary meaning of the phrase.  (ECF No. 34-1 at Pg ID 750-51.)  Defendants propose the following construction: "the liner is held by pressure between the respiratory mask and the user's face without being secured or attached to the respiratory mask or the user's face."  (ECF No. 40 at Pg ID 932.)

Defendants fail to overcome the heavy presumption that terms mean what they say and carry their ordinary meaning.  Rather, Defendants' brief calls to

16

propose a new narrowing construction, without satisfying their burden.  Therefore, the Court adheres to the plain and ordinary meaning of this phrase as expressed by Plaintiff in its briefs.

**5.  "the extending portion is a baffle for regulating the flow of air away from the face-engaging portion"**

Plaintiff argues the Court again should construe this term to adhere to the plain and ordinary meaning of the phrase.  (ECF No. 34-1 at Pg ID 750-51.) Defendants propose the following construction: "the extending portion of the liner forms a plate-like protrusion that lays upon the user's face to regulate the flow of air along the user's face away from the face-engaging portion of the mask."  (ECF No. 40 at Pg ID 934.)  Again, Defendants propose new language that adds limitations without explaining why the Court should not rely on the plain and ordinary meaning of the terms in the claim.  Therefore, the Court adheres to the plain and ordinary meaning of the terms.

## IV.   Conclusion

The Court hereby construes the disputed claim terms as set forth above.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: November 29, 2016

17

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, November 29, 2016, by electronic and/or U.S. First Class mail.

s/ Richard Loury

Case Manager

# EXHIBIT A

EXHIBIT A
Parties' Proposed Constructions for Claim Terms in U.S. Patent No. 8,365,733

| Claim(s) | Term/Phrase | Plaintiff's Proposed Construction | Plaintiff's Support | Defendants' Proposed Construction | Defendants' Support |
|---|---|---|---|---|---|
| 1 | **"respiratory mask" when used in the preamble and body** | The parties agree that this term means "a respiratory device sized to fit over a user's mouth and/or nose." <br><br> However, other disputes remain. The plaintiff's position is that the preamble is not limiting and the claims are drawn to a liner is for use with a respiratory mask. | • Title <br> • Abstract <br> • 1:14-15 <br> • 2:21-27 <br> • 3:46-54 <br> • Claim 1 <br> • Figs. 1-3 <br> • Restriction 12/21/11 <br> • Election 01/13/12 <br> • OA 02/02/12 <br> • Response 07/19/12 <br> • NOA 10/02/12 | The parties agree that this term means "a respiratory device sized to fit over a user's mouth and/or nose." <br><br> However, other disputes remain. The defendants' position is that the preamble is limiting and the claims require a respiratory mask in combination with a liner, otherwise the claims would be invalid as indefinite, including with respect to the perimeters of the body and face engaging portion of the respiratory mask. | • Abstract <br> • 1:33-37 <br> • 2:21-3:14 <br> • 3:32-4:11 <br> • 4:54-5:8 <br> • 5:23-5:32 <br> • 5:43-5:58 <br> • 5-61-5:63 <br><br> • the prosecution file history overall, including without limitation Office Action (2/02/2012) and Response with Amendment (7/19/2012); and in cited art including Schirm U.S. Pub. No. 2009/0139525, Clowers 6,698,427) |
| 1, 2, 4 | **"face-engaging portion" when used in the preamble and body** | The parties agree that this term means "a portion formed to contact a user's face | • Abstract <br> • 2:25-37 <br> • Claims 1, 2, 4 <br> • Figs. 5, 6, 10 | The parties agree that this term means "a portion formed to contact a user's face | • Fig. 5 <br> • 1:33-40 <br> • the prosecution file history overall, |

| Claim(s) | Term/Phrase | Plaintiff's Proposed Construction | Plaintiff's Support | Defendants' Proposed Construction | Defendants' Support |
|---|---|---|---|---|---|
| | | adjacent to the user's mouth and/or nose." However, other disputes remain. The plaintiff's position is that the preamble is not limiting and the liner is for use with a respiratory mask having a face-engaging portion. | • OA 02/02/12<br>• Response 07/19/12<br>• NOA 10/02/12 | adjacent to the user's mouth and/or nose." However, other disputes remain. The defendants' position is that the preamble is limiting and the claims require a respiratory mask in combination with a liner, otherwise the claims would be invalid as indefinite, including with respect to the perimeters of the body and face engaging portion of the respiratory mask. | including without limitation Office Action (2/02/2012) and Response with Amendment (7/19/2012); and in cited art including Schirm U.S. Pub. No. 2009/0139525 para. [0026]) |
| 1, 2 | "extending portion" "extending portion of the body" "wherein a perimeter of the outer edge is larger than a perimeter of the face-engaging portion of the | Plain meaning; no construction necessary. Alternatively: a portion of the body formed by a perimeter of the outer edge extending beyond a perimeter of the face- | • Abstract<br>• 2:52-58<br>• 2:58-67<br>• 3:1-14<br>• 3:45-52<br>• 3:56-65<br>• 4:54-59<br>• Claims 1, 2, 8, 9<br>• Fig. 1, 6-10<br>• OA 02/02/12<br>• Response 07/19/12 | a loosely protruding portion of the liner formed by the liner's outer perimeter extending outwardly beyond the perimeter of the face engaging portion of the mask, that is not secured or attached to the mask. | • Fig. 1, 6-10<br>• 2:52-67<br>• 3:1-14<br>• 3:45-52<br>• 3:56-65<br>• 4:7-34<br>• 4:54-5:8<br>• the prosecution file history overall, including without limitation Office |

| Claim(s) | Term/Phrase | Plaintiff's Proposed Construction | Plaintiff's Support | Defendants' Proposed Construction | Defendants' Support |
|---|---|---|---|---|---|
| | **respiratory mask for forming an extending portion of the body"**<br><br>(the parties agree that these terms should have the same construction) | engaging portion of the respiratory mask. | • NOA 10/02/12 | | Action (2/02/2012) and Response with Amendment (7/19/2012); and in cited art including Schirm U.S. Pub. No. 2009/0139525, Clowers 6,698,427) |
| 1 | **"extending portion configured to be in non-adhering communication with a user's face"** | **"extending portion . . . "**<br><br>*See Plaintiff's proposal above.*<br><br>**". . . configured to be in non-adhering communication with a user's face"**<br><br>Plain meaning; no construction necessary.<br><br>Alternatively: configured to not adhere to the user's face | • Abstract<br>• 2:52-58<br>• 2:58-67<br>• 3:1-14<br>• 3:45-52<br>• 3:56-65<br>• 4:54-59<br>• 5:5-8<br>• Claims 1, 2, 8, 9<br>• Fig. 1, 6-10<br>• OA 02/02/12<br>• Response 07/19/12<br>• NOA 10/02/12 | This term is indefinite. To the extent it can be interpreted, it is:  the extending portion of the liner is not secured or attached to the respiratory mask in order to loosely protrude outwardly to the liner's outer edge to lay in contact upon a user's face without adhesive. | • Fig. 1, 6-10<br>• 2:52-67<br>• 3:1-14<br>• 3:45-52<br>• 3:56-65<br>• 4:7-34<br>• 4:54-5:8<br>• the prosecution file history overall, including without limitation Office Action (2/02/2012) and Response with Amendment (7/19/2012); and in cited art including Schirm U.S. Pub. No. 2009/0139525, Clowers 6,698,427; Belfer 6,196,223) |

| Claim(s) | Term/Phrase | Plaintiff's Proposed Construction | Plaintiff's Support | Defendants' Proposed Construction | Defendants' Support |
|---|---|---|---|---|---|
| | | | | | • Indefiniteness is established by the '733 patent. |
| 1 | "the liner is configured to be releasably held by the mask and the user's face such that the outer edge extends beyond the face-engaging portion" | Plain meaning; no construction necessary. | • 2:25-33<br>• 2:52-58<br>• 2:62-67<br>• Claim 1<br>• Fig. 7-10 | the liner is held by pressure between the respiratory mask and the user's face without being secured or attached to the respiratory mask or the user's face. | • 2:27-33<br>• 2:65-67<br>• 3:56-65<br>• 4:54-5:4<br>• the prosecution file history overall, including without limitation Office Action (2/02/2012) and Response with Amendment (7/19/2012); and in cited art including Schirm U.S. Pub. No. 2009/0139525, Clowers 6,698,427; Belfer 6,196,223) |
| 2 | "the extending portion is a baffle for regulating the flow of air away from the face-engaging portion" | "extending portion . . . "<br><br>*See Plaintiff's proposal above.*<br><br>"a baffle for regulating the flow of | • 3:1-14<br>• 3:20-22<br>• 3:45-52<br>• Claim 2<br>• http://www.merriam-webster.com/dictionary/baffle (accessed 10/23/15) | the extending portion of the liner forms a plate-like protrusion that lays upon the user's face to regulate the flow of air along the user's face away from the face- | • Figs. 1, 6-10<br>• 2:50-67<br>• 3:1-14<br>• 3:45-52<br>• 5:1-4<br>• McGraw-Hill, Dictionary of Scientific and |

| Claim(s) | Term/Phrase | Plaintiff's Proposed Construction | Plaintiff's Support | Defendants' Proposed Construction | Defendants' Support |
|---|---|---|---|---|---|
| | | **air away from the face-engaging portion"**<br><br>Plain meaning; no construction necessary.<br><br>Alternatively: a plate, wall, or screen to regulate the flow of air away from the face-engaging portion. | | engaging portion of the mask. | Technical Terms, (Fifth Edition) "Baffle" p. 179) |